1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

RUSSELL SEDGWICK;

12

Plaintiff,

13

v.

14

UNKNOWN K-9 HANDLER, *et al.*,

15

Defendants.

16

17

_____ )

Civil No. 12-CV-0510-MMA (WVG)

**REPORT AND
RECOMMENDATION FOR
TERMINATING SANCTIONS**

18
19
20
21
22
23
24
25
26
27
28

Pending before this Court is an action under the Civil Rights Act, 42 U.S.C. Section 1983, that was filed over one year ago and is no longer being prosecuted by Plaintiff. After Plaintiff's failure to appear for a Court ordered Mandatory Settlement Conference ("MSC"), and an Order to Show Cause ("OSC"), failure to file the appropriate briefing as ordered by the Court, and failure to provide the Court with updated contact information, the undersigned RECOMMENDS that the Honorable District Judge grant terminating sanctions against Plaintiff.

## I. **BACKGROUND**

### A. **GENERAL BACKGROUND**

On February 29, 2012, Plaintiff, who was detained at R.J. Donovan Correctional Facility ("R.J. Donovan") in San Diego, California, and proceeding *pro se*, filed the instant civil rights action in this Court. (Doc. No. 1.) In his Complaint,

1

1  Plaintiff claims that a San Diego police officer used excessive force during Plaintiff's
2  arrest on April 15, 2011, in violation of his Fourth, Eighth, and Fourteenth Amendment
3  rights.  See Doc. No. 1.  Plaintiff filed his Complaint against an unknown canine
4  handler, an unknown canine, the San Diego Sheriff's Department,[1] the County of San
5  Diego, Agent Cornwell, and Anthony Calvert.  Id.

6  On May 3, 2012, Defendant County of San Diego filed a Motion to Dismiss
7  Plaintiff's Complaint.  (Doc. No. 10.)  On May 14, 2012, Defendant Cornwell filed a
8  Motion to Dismiss Plaintiff's Complaint, and on June 12, 2012, Defendant Calvert also
9  filed a Motion to Dismiss.  (Doc. Nos. 12, 16.)  Plaintiff did not respond to any of the
10  Motions.

11  On June 19, 2012, the Honorable Michael M. Anello, United States District
12  Judge, granted Defendant County of San Diego's Motion to Dismiss, and granted in
13  part and denied in part Defendant Cornwell's Motion to Dismiss.  (Doc. No. 18.)  On
14  July 13, 2012, the District Judge granted Defendant Calvert's Motion to Dismiss.  (Doc.
15  No. 22.)  In ruling on the Motions to Dismiss, the Court dismissed with prejudice
16  Plaintiff's Eighth and Fourteenth Amendment claims as to all Defendants, but found
17  that Plaintiff alleged a plausible Fourth Amendment excessive force claim against
18  Defendant Cornwell.  Id. at 7.  Further, the Court dismissed Plaintiff's conspiracy claim
19  as to all Defendants without prejudice, and allowed Plaintiff thirty days to file an
20  amended complaint if he chose to pursue his Monell claim against Defendant County
21  of San Diego and conspiracy claim against all Defendants.  Id. at 8.  Plaintiff did not
22  file an amended complaint.

23  On June 22, 2012, Defendant Cornwell filed an Answer to Plaintiff's original
24  Complaint.  (Doc. No. 19.)  On June 27, 2012, while Plaintiff was still in custody at
25  R.J. Donovan, this Court issued a Case Management Conference Order Regulating
26  Discovery and Other Pretrial Proceedings.  (Doc. No. 20.)  In the Order, the Court set

27  _____

28  [1] The San Diego Sheriff's Department was erroneously sued as both the San Diego
Sheriff's Department and the County of San Diego.  (Doc. Nos. 10-1 at 2; 18 at 4.)

12CV0510

an MSC for February 5, 2013, at 2:00 pm. Id. at 3.  On  October 10, 2012, due to a conflict on the Court's calendar, the MSC was continued to March 1, 2013, at 9:00 a.m. (Doc. No. 24.)  Finally, on November 13, 2012, with Plaintiff still in custody at R.J. Donovan, the MSC was continued to March 7, 2013, at 9:00 a.m., as a result of another conflict on the Court's calendar.  (Doc. No. 28.)

On December 13, 2012, Defendant Cornwell filed an *Ex Parte* Application to Extend the Discovery Cutoff. (Doc. No. 29.)  In the Application, Defendant Cornwell claimed that the sole purpose of the extension request was to take Plaintiff's deposition because the Defense had been unable to take Plaintiff's deposition "through no fault of [Plaintiff]." Id. at 1-2.  Defendant Cornwell also noted that Plaintiff was no longer incarcerated, and had been released to probation supervision. Id. at 2.  This was the first time that the Court had received any information about Plaintiff's release from prison.  On December 17, 2012, in an Order granting Defendant's Application, this Court again noted that the MSC was set for March 7, 2013, at 9:00 a.m. (Doc. No. 30 at 3.)

On December 26, 2012, the Court's Order Permitting the Deposition of Plaintiff Russell Sedgwick, An Incarcerated Person, was returned to the Court as undeliverable.  (Doc. Nos. 27, 31.)  The Order had been mailed to Plaintiff's R.J. Donovan address, the only address on file with the Court.  The Court Clerk's Office noted on the docket that no forwarding address had been provided.  (Doc. No. 31.)

On January 8, 2013, the Court's Order Granting Defendant's *Ex Parte* Application to Extend Discovery Cutoff; Third Amended Case Management Conference Order, was also returned as undeliverable.  (Doc. No. 34.)  The mail, returned from R.J. Donovan, was marked with, "Return to Sender." Id. at 3.

On January 23, 2013, the Court's second Order Permitting the Deposition of Plaintiff Russell Sedgwick, An Incarcerated Person, was returned as undeliverable. (Doc. No. 35.)  The mail, again sent to R.J. Donovan, was marked with, "Discharged 11/19/12." Id. at 3.

## B. <u>MANDATORY SETTLEMENT CONFERENCE</u>

On March 7, 2013, at 9:00 a.m., the Court attempted to convene a Mandatory Settlement Conference in the undersigned's chambers.  Plaintiff failed to appear for the MSC.  Mr. Stephen Aronis was present as counsel for Defendant Cornwell, and a California Department of Corrections and Rehabilitation ("CDCR") legal representative with full settlement authority for Defendant was also available to participate in the Conference by telephone.[2]   The Court waited for Plaintiff until 9:30 a.m., thirty minutes after the MSC was to begin, and then dismissed Defense counsel, noting that Plaintiff had failed to appear.

Plaintiff did not contact chambers prior to the MSC, did not request a new date, and failed to contact the Court anytime after the failed MSC.  Further, the only documentation that the Court has received regarding Plaintiff's release date from R.J. Donovan is the handwritten note, "Discharged 11/19/12," on an envelope returned to the Court on January 23, 2013.  (Doc. No. 35.)  While the Court did issue an Amended Scheduling Order on November 13, 2012, shortly before Plaintiff's apparent release, which continued the MSC to March 7, 2013, Plaintiff was notified of a Court ordered MSC when the first Scheduling Order was issued on June 27, 2012.  (Doc. No. 20.)  In that Order, the Court set an MSC for February 5, 2013.  <u>Id.</u>  Plaintiff did not appear in the undersigned's chambers on February 5, 2013, nor did he contact the Court.  While still in custody at R.J. Donovan, Plaintiff received an Amended Scheduling Order on October 10, 2012, which continued the MSC to March 1, 2013.   (Doc. No. 24.) Plaintiff did not appear in the undersigned's chambers on March 1, 2013, nor did he contact the Court.

## C. <u>ORDER TO SHOW CAUSE HEARING</u>

On March 12, 2013, the Court issued an Order to Show Cause ("OSC") as to <u>why sanctions should not issue against Plaintiff</u> for his failure to participate in the

---

[2] Defendant's request for the CDCR legal representative's telephonic appearance was granted by the Court on February 4, 2013.  (Doc. No. 37.)

12CV0510

MSC. (Doc. No. 39.) An OSC hearing was set for April 5, 2013, at 4:00 p.m. (Doc. No. 39.) On the date of the OSC hearing, Mr. Aronis was present in the undersigned's courtroom on behalf of Defendant Cornwell. Plaintiff failed to appear for the OSC hearing.

The Court was prepared to wait for Plaintiff for approximately thirty minutes on the date of the OSC hearing, and no other matters were scheduled on the calendar for that time period. However, upon arrival in the courtroom, Defense counsel provided the Court with an Inmate Detail from the San Diego County Sheriff's Department website, which showed that Plaintiff had been booked into the San Diego Central Jail on March 8, 2013, at 22:45:29. His bail amount was listed at $155,000. The Inmate Detail noted state court dates set for Plaintiff on April 10-11, 2013.

After being informed that Plaintiff was likely incarcerated in the San Diego Central Jail, the Court declined to wait thirty minutes for Plaintiff to appear before starting the OSC Hearing. At 4:07 p.m., the Court went on the record, detailing the reasons for the OSC Hearing, and noting that Plaintiff had failed to appear. The Court stated that Plaintiff was ordered to be present in the undersigned's chambers for the March 7, 2013, MSC, and failed to appear, and the OSC was subsequently issued, ordering Plaintiff to appear and explain his absence at the MSC.

During the OSC, Defense counsel stated that the Court had originally ordered Plaintiff's deposition to take place in prison while incarcerated, however, Plaintiff was released prior to his scheduled deposition.[3/] In January of 2013, Defense counsel learned that Plaintiff was detained in the San Diego County Jail, and the Court again granted Defendant's request to depose Plaintiff while in custody. (Doc. No. 33.)

---

[3/] It is the Court's understanding that Plaintiff was released from custody through the Assembly Bill (AB) 109 program. In 2011, Governor Edmund G. Brown Jr. signed AB 109 in an effort to reduce the number of inmates in California state prisons. California Department of Corrections & Rehabilitation, http://www.cdcr.ca.gov/realignment/

12CV0510

On March 27, 2013, Defendant filed a Reply to the Court's OSC.  (Doc. No. 40.)  In his Reply, Defendant explained that the Defense had incurred approximately $1,870.00 in attorney's fees associated with preparing for and attending the MSC.  Id. at 2.  In his Declaration, Defense counsel explained that, because Defendant Cornwell is indemnified by the CDCR, a legal representative of CDCR is assigned to this case to assist with evaluation and resolution.  Id. at 2.  Therefore, Defense counsel was required to send a settlement evaluation and liability assessment letter to the CDCR legal representative prior to the MSC.  Defense counsel also drafted an *Ex Parte* Application and proposed order, requesting that the Court excuse the personal appearance of the CDCR legal representative, drafted a Court ordered settlement brief, prepared for the MSC, and personally appeared in the undersigned's chambers for the Conference.  Id. at 2-3.

### D. FAILURE TO FILE DOCUMENTS WITH THE COURT

In its Scheduling Order, the Court ordered Plaintiff to file an MSC brief at least one week prior to the MSC.  Plaintiff failed to file a brief.  In its Order to Show Cause, the Court ordered Plaintiff to file a Response to the OSC no later than March 22, 2013.  (Doc. No. 39 at 1.)  Plaintiff failed to filed a Response.  Plaintiff has not provided the Court with his current contact information, and neglected to file Oppositions to the three Motions to Dismiss filed by Defendants.

### E. PLAINTIFF'S FAILURE TO PROVIDE THE COURT WITH UPDATED CONTACT INFORMATION

During the OSC Hearing, Defense counsel represented to the Court that he took Plaintiff's deposition in county jail on January 9, 2013.  At that time, Defense counsel informed Plaintiff, as an officer of the Court, that Plaintiff needed to update his address on file with the Court because Orders were being returned as undeliverable. Plaintiff has been aware that the Court does not have his correct phone number or a reliable address to send him mail about this case, but he has not taken any action to correct these problems.  More than one year after filing this lawsuit, after all discovery has been closed, and five months after being released from prison, Plaintiff has failed

12CV0510

1   to provide the Court with updated contact information by which to receive any Orders

2   or notifications.  The Court has no way of contacting Plaintiff.  At the MSC, defense

3   counsel was also unaware of Plaintiff's whereabouts.[4]

4   ## II.  LEGAL STANDARD

5   The Court may impose broad discovery sanctions for failure to obey a court

6   order that compels discovery, up to and including "dismissing the action or proceeding

7   in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(v).  Federal Rule of Civil Procedure

8   16(f) requires parties to comply with pretrial orders and appear at pretrial conferences,

9   and provides that a judge may order appropriate sanctions, as outlined in Rule

10  37(b)(2)(A)(ii)-(vii), for non-compliance.  Fed. R. Civ. P. 16(f)(1)(A) and (C).  The

11  sanctions can be severe in nature, including dismissal of the case.  See Rule

12  37(b)(2)(A)(v).

13  The Ninth Circuit has repeatedly upheld sanctions imposed for failure to

14  comply with orders regarding settlement conferences.  See Lucas Auto. Engineering,

15  Inc. v. Bridgestone/Firestone, Inc., 275 F.3d 762, 769 (9th Cir. 2001) (affirming

16  monetary sanctions for failure to attend mediation with appropriate representative);

17  Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1396 (9th Cir. 1993) (affirming

18  monetary sanctions for failure to comply with conference); Ayers v. City of Richmond,

19  895 F.2d 1267, 1270 (9th Cir. 1990) (affirming monetary sanctions for attorney who

20  failed to appear at scheduled settlement conference).

21  Moreover, "'disobedient conduct not shown to be outside the control of the

22  litigant' is all that is required to demonstrate willfulness, bad faith, or fault."  Henry v.

23  Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993) (quoting Fjelstad, 762 F.2d at

24  _____

25  [4] The Court has been advised that Plaintiff's mother's address is listed in Plaintiff's
26  parole file.  Defendant Cornwell mailed a copy of his Motion for Summary Judgment
    to Plaintiff's mother's address.  The Court will mail the instant Report and
27  Recommendation to Plaintiff's mother's address.  However, the Court has no way of
    knowing whether this is in fact a valid address for Plaintiff, or whether Plaintiff will
28  actually receive the Report and Recommendation.

1341).

In addition to a finding of willfulness or bad faith, the Ninth Circuit has provided the following five nonexclusive factors that the sanctioning court may use to determine whether case-dispositive sanctions are just:

> (1) The public's interest in expeditious resolution of litigation;
> (2) The court's need to manage its dockets;
> (3) The risk of prejudice to the party seeking sanctions;
> (4) The public policy favoring disposition of cases on their merits; and
> (5) The availability of less drastic sanctions.

Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007).   Because "factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, . . . [factors] 3 and 5, prejudice and availability of less drastic sanctions, are decisive."  Valley Eng'rs v. Electric Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998).  Further, "factor 5 involves consideration of three subparts: whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." Id.  "[W]hat is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.'"  Id.

District courts have the inherent power to control their dockets, and in exercising that power they may impose sanctions including, where appropriate, dismissal of a case.  Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir.) (dismissal for failure to obey court order), cert. denied, 113 S.Ct. 321 (1992).  "[T]he failure to prosecute diligently is sufficient by itself justify a dismissal..."  Morris v. Morgan Stanley & Co., 942 F.2d 648, 651 (9th Cir. 1991).  Before dismissing a case on its own motion, the court should consider the availability of less drastic alternatives and whether the plaintiff has been warned of the possibility of dismissal.  Oliva v. Sullivan, 958 F.2d 272, 274 (9th Cir. 1992) (dismissal for failure to prosecute.)

Although termination of a plaintiff's case pursuant to Rule 37 is one of the most severe of sanctions, courts have imposed this sanction where appropriate.  The

12CV0510

Ninth Circuit has affirmed, although by unpublished memorandum disposition, a district court's dismissal based on "failure to prosecute where [the plaintiff] failed to respond to discovery requests, attend her deposition, produce initial disclosures, submit a Pretrial Order, attend the final Pretrial Conference, or file an opposition to [the] defendant's Motion for Terminating Sanctions." Drumgoole v. Am. Airlines, Inc., 316 Fed. Appx. 606, 607 (9th Cir. 2009).

In another recent unpublished decision by the Ninth Circuit, the Court upheld the district court's dismissal of the plaintiff's action for failure to prosecute under Federal Rule of Civil Procedure 41(b), after the plaintiff failed to appear at a case management conference, failed to appear at two scheduled depositions, and failed to comply with the district court's orders to provide discovery and pay attorney's fees. Subramanian v. QAD, Inc. 494, Fed.Appx. 826, 2 (9th Cir. 2012). The Ninth Circuit noted that the district court, after considering proper factors, determined that further delay was not justified and would prejudice the defendants. Id. The Court also agreed with the district court's assessment that less drastic measures, including monetary sanctions and contempt orders, had failed to curb the plaintiff's dilatory conduct. Id.

## III. **DISCUSSION**

Mandatory Settlement Conferences provide an important vehicle for parties to attempt to resolve their disputes. This Court expends significant time preparing for and conducting such Conferences, and takes them very seriously. As with Early Neutral Evaluation Conferences ("ENEs"), MSCs are not meaningful absent attendance by those with full settlement authority. To that end, the Court's Case Management Conference Order, which sets the MSC date, provides in relevant part:

> Pursuant to Local Civil Rule 16.3, all party representatives...with full and unlimited authority to negotiate and enter into a binding settlement, as well as the principal attorney(s) responsible for the litigation, **must be present and legally and factually prepared to discuss and resolve the case at the mandatory settlement conference...Failure to attend the conference or obtain proper excuse** <u>**will be considered grounds for sanctions.**</u>

(Doc. Nos. 20 at 3-4; 24 at 3-4; 28 at 3-4; 30 at 3-4.) (emphasis added)

12CV0510

1   Although the Court warned the parties that sanctions may issue for failure to

2   attend the MSC, Plaintiff still failed to appear.

3   According to the undelivered mail returned from R.J. Donovan, information

4   provided by Defense counsel, and the Inmate Detail sheet from the San Diego County

5   Sheriff's Department, Plaintiff is no longer housed at R.J. Donovan Correctional

6   Facility, and has not been housed at that facility for five months.  However, Plaintiff

7   has failed to provide the Court with updated contact information.  Defendant continues

8   to incur costs related to this litigation, and counsel continues to devote time and effort

9   to this case.  As a result, Defendant Cornwell's pursuit to defend himself has become

10  unreasonably difficult due to Plaintiff's lack of any sort of prosecution of this action,

11  which he filed more than one year ago.  Plaintiff's failure to provide the Court with

12  current contact information will continue to delay and obstruct the litigation process.

13  He has violated two recent Court Orders which required his appearance before the

14  undersigned.  Defense counsel appeared in chambers on both occasions.  By failing to

15  appear without prior notice, or a request to the Court to continue the date, Plaintiff

16  demonstrated disregard for Defense counsel's time as well as the undersigned's time,

17  and an overall disinterest in prosecuting this case.

18  The last contact that Plaintiff made with the Court was on August 16, 2012,

19  when he attempted to file an *ex parte* letter.  (Doc. No. 23.)  The letter was rejected on

20  a discrepancy order and not filed because it violated Local Rule 83.9, which prohibits

21  *ex parte* communications with the Court.  Id. at 1.  Although he did participate in a

22  deposition on January 9, 2013, as represented by Defense counsel at the OSC, the

23  deposition was scheduled and conducted by the Defense while Plaintiff was in custody.

24  Other than his participation in the deposition, Plaintiff has not filed anything on the

25  docket, nor contacted chambers for more than eight months.  Further, he has made no

26  effort to inquire about this case.  Plaintiff has not undertaken to propound any discovery

27  on Defendant Cornwell.  If Plaintiff's conduct continues, it is likely that he

28

12CV0510

1  will not participate in preparing a pretrial conference order, due on August 12, 2013,

2  or attend the pretrial conference set for August 19, 2013.  (Doc. No. 30 at 4.)

3       The apparent inefficacy of the Court's warnings and orders, and the

4  anticipated inefficacy of lesser sanctions, combine to inform the undersigned's belief

5  that the only sanction that is practically available to the Court at this time is to dismiss

6  Plaintiff's case against the two remaining Defendants, Cornwell and the unknown

7  canine handler.

8  **A. Plaintiff Has Acted With Willful Disobedience and Bad Faith**

9       Plaintiff's recent behavior in failing to adhere to the Court's Orders to attend

10  the MSC and the OSC, and failing to file briefs related to both, show that Plaintiff's

11  defiance is willful and in bad faith.

12  **1.   Willful Disobedience of Court Orders and Bad Faith Conduct**

13       Plaintiff did not contact the Court or Defendant to let them know that he would

14  not be attending the MSC, rather, he simply failed  to appear.  He did not submit an

15  MSC brief, as ordered by the Court.  Further, Plaintiff knew that the Court did not have

16  his correct phone number or a reliable address to receive mail, but he did not take any

17  action to remedy those problems.  He failed to respond to the OSC, and did not attend

18  the OSC Hearing, as ordered by the Court.  These actions demonstrate that Plaintiff is

19  only willing to participate in this litigation on his own terms, and possibly no longer

20  willing to participate in the litigation at all.

21  **B. Terminating Sanctions Are Appropriate**

22       After considering the five factors that bear on whether case dispositive

23  sanctions are just, the undersigned concludes that dismissal is a just and appropriate

24  sanction.[5/]

25  _____

26  [5/] The undersigned acknowledges that these factors are not "a mechanical means of

27  determining what discovery sanction is just, . . . a series of conditions precedent before
the judge can do anything, [or] a script for making what the district judge does

28  appeal-proof," but merely "a way for a district judge to think about what to do."  <u>Valley
Eng'rs v. Elec. Eng'g Co.</u>, 158 F.3d 1051, 1057 (9th Cir. 1998).  Nonetheless, these

12CV0510

### 1.   Public Interest in Expeditious Resolution of Litigation

This factor weighs in favor of dismissal, as Plaintiff's past and anticipated future conduct reflects anything but progress towards an expeditious resolution. Plaintiff's lack of interest in this case unnecessarily undermines the smooth flow of litigation, and the undersigned fully anticipates that this conduct will continue into the future. Plaintiff must cooperate in order for the case to move forward, and the Court, without any way to contact Plaintiff, is at a loss to understand how the case will be able to proceed without an active and available Plaintiff. Therefore, if Plaintiff's case is allowed to proceed, the public's interest in expeditious resolution of cases will almost certainly not be satisfied.

### 2.   The Court's Need To Manage Its Docket

The Court's need to manage its docket is great, as the Southern District of California is one of the busiest districts in the nation. Despite the Court's impacted docket, Plaintiff's behavior has necessitated the Court's direct intervention due to his failure to comply with Court orders.

The undersigned, his clerk, and a legal extern all spent time waiting for Plaintiff to appear for both the MSC and the OSC, to no avail. The undersigned's calendar was blocked off for two hours to facilitate the MSC, and thirty minutes for the OSC. This was time that could have been spent facilitating settlement in other civil matters on the Court's docket. The Court anticipates that Plaintiff will continue this behavior and fail to appear for court dates in the future, including the upcoming Pretrial Conference before the District Judge, set for August 19, 2013, and the trial, set for September 17, 2013.

The undersigned is mindful that Plaintiff is representing himself and that *pro se* litigants often require extra attention and time. This is not a problem, and the undersigned welcomes the opportunity to assist *pro se* litigants to the extent that

---

factors demonstrate that dismissal is just under the circumstances here.

12CV0510

1    fairness, neutrality, and impartiality allow.  However, the Court cannot assist a litigant

2    that no longer takes an active interest in his own case.

3         The Court understands that Plaintiff has been released from the custody of R.J.

4    Donovan.  However, Plaintiff has failed to provide the Court with an updated address

5    or telephone number, and all recent mail sent to Plaintiff has been returned as

6    undeliverable. (Doc. Nos. 31, 34, 35.)   Plaintiff brought this case, and it is his

7    obligation to maintain current contact information with the Court in order to receive

8    notifications, Orders, and other documents relevant to this case.  If Plaintiff does not

9    intend to prosecute this case, then he shall take the proper steps to dismiss the action.

10   Plaintiff has not given the Court any reason to believe that his behavior will be different

11   going forward.  Therefore, the Court is left with no other option but to recommend to

12   the District Judge that terminating sanctions be granted.

13        **3.      Prejudice to Other Parties From the Discovery Violations**

14        "A defendant suffers prejudice if the plaintiff's actions impair the defendant's

15   ability to go to trial or threaten to interfere with the rightful decision of the case."

16   Adriana Int'l Corp. v. Lewis & Co., 913 F.2d 1406, 1412 (9th Cir. 1990); see also

17   Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993).  The foregoing quote

18   accurately reflects the prejudice that Defendant has suffered and undoubtedly will

19   continue to suffer.

20        At a time when state resources are limited, Defendant Cornwell will be forced

21   to prepare for the upcoming trial while Plaintiff has apparently lost interest in the case.

22   The Court's Orders have had no impact on Plaintiff's behavior, and the Court has no

23   reason to believe that he will constructively participate in the future.

24        Not only has Defendant Cornwell suffered prejudice to date, but this Court is

25   convinced that he will continue to suffer prejudice into the future.  Such prejudice

26   //

27   //

28   //

12CV0510

1 | will increase with the time for trial looming[6/] and Defendant will be forced to prepare
2 | a pretrial conference order and other material in support of his defense.

3 | The Court understands that Plaintiff is a *pro se* litigant and recognizes that this
4 | has the strong potential to pose challenges for Plaintiff and for the litigation process as
5 | a whole.  However, the lack of respect for the Court and opposing counsel, and the
6 | disregard for any sort of attempt at cooperation, leads this Court to the determination
7 | that recommending terminating sanctions is the only option remaining.

8 | ### 4.   **Public Policy Favoring Disposition on The Merits**

9 | Although this factor ordinarily cuts against imposing case-dispositive
10 | sanctions, the undersigned does not believe that this important public policy would be
11 | fulfilled if Plaintiff's case is allowed to continue.  Plaintiff's apparent disinterest in the
12 | case will likely mean that a true adjudication on the merits may never be achievable in
13 | the end.

14 | ### 5.   **Whether Less Drastic Sanctions Are Available**

15 | This factor involves consideration of three subparts: "whether the court
16 | explicitly discussed alternative sanctions, whether it tried them, and whether it warned
17 | the recalcitrant party about the possibility of dismissal."  <u>Valley Eng'rs</u>, 158 F.3d at
18 | 1057.  Here, in the Scheduling Order and subsequent amendments sent to Plaintiff
19 | while he was still incarcerated at R.J. Donovan, the Court expressly warned the parties
20 | that sanctions could issue for failure to attend the MSC.  (Doc. No. 20 at 4; Doc. No.
21 | 24 at 4; Doc. No. 28 at 4; Doc. No. 30 at 4.)  Further, the Court's OSC, issued on
22 | March 12, 2013, ordered Plaintiff to show cause why sanctions should not be imposed
23 | against him.  (Doc. No. 39.)  Plaintiff proceeded to violate the Court's Orders.[7/]  The

---

25 | [6/] On December 17, 2012, this Court issued a Third Amended Case Management
26 | Conference Order, setting the jury trial to begin on September 17, 2013. (Doc. No. 30.)

28 | [7/] Although the Court also issued an OSC notifying Plaintiff that sanctions may issue,
| it is highly unlikely that Plaintiff received the OSC notice due to his failure to provide

12CV0510

1   undersigned is certain that any sanction short of termination of this case will ultimately
2   fail to compel Plaintiff to conform his behavior.  As an initial matter, the Court is
3   unable to contact Plaintiff.  Moreover, the possibility of sanctions has not worked, and
4   monetary sanctions will be empty and ineffective because Plaintiff has qualified to
5   proceed *in forma pauperis* and does not have any assets.  (<u>See</u> Doc. Nos. 2, 3 (IFP
6   motion and order granting motion).)

7         Issue and claim preclusion sanctions will also be ineffective, as the issue here
8   is not Plaintiff's failure to provide discovery.  Defendants will continue to suffer
9   prejudice short of precluding Plaintiff from presenting evidence in support of all of the
10  issues and claims in this case.  This is because Plaintiff has demonstrated a lack of
11  interest in continuing to prosecute the case as a whole.  This is not a case where a party
12  violated one isolated discovery order or refused to produce documents related to only
13  one claim, the punishment for which could be to preclude evidence on a discrete issue
14  or claim.  Selective issue and claim preclusion will not ameliorate the overall prejudice
15  that Defendant suffers.

16        Finally, Defense counsel told Plaintiff to update his contact information with
17  the Court because Court orders were being returned as undeliverable.  Again, Plaintiff
18  failed to comply.  Based on experience and observation, the undersigned can come to
19  no other conclusion than the only effective or practical solution here is dismissal.

20  **C. <u>Defense Should Bear Its Own Attorneys Fees and Costs for the MSC</u>**

21        Defendant Cornwell filed a Declaration of attorney Stephen Aronis regarding
22  fees and costs associated with the failed MSC.  (Doc. No. 40.)  Mr. Aronis declares that
23  the Defense incurred $1,870.00 in attorneys fees related to the MSC.  <u>Id.</u> at 2.
24  However, based on the balance of equities, the undersigned recommends that fees and
25  costs not be awarded to the Defense.

26

27  _____

28  the Court with updated contact information.  The Court has been unable to warn
    Plaintiff because it does not know how to get in touch with him.

1   The Federal Rules of Civil Procedure require that the Court award Defendant

2   "reasonable expenses, including attorney's fees" "[i]nstead of or in addition to"

3   terminating sanctions. Fed. R. Civ. P. 37(b)(2)(c).  The award of expenses under this

4   rule is mandatory unless Plaintiff can show that his conduct was "substantially

5   justified" or if "other circumstances make an award of expenses unjust." Id.  Based on

6   the discussion above, Plaintiff cannot show that his conduct was justified in any way,

7   much less substantially so.  However, as explained below, other circumstances render

8   the award of costs unjust.

9   The practical reality here is that Plaintiff is proceeding *in forma pauperis* and

10   has no assets against which Defendant could collect a costs award.  (See Doc. Nos. 2,

11   3 (IFP motion and order granting motion).)  Further, given Plaintiff's financial state,

12   any award against him would likely impose an unjust burden.  The undersigned does

13   not wish to trivialize the fact that the Defense has incurred attorneys fees and costs as

14   a direct result of Plaintiff's conduct, but the balance of equities nonetheless favors the

15   Defense bearing its own costs here.

16   ### IV. RULING

17   Plaintiff filed this lawsuit over one year ago.  The Court will not stand idly by

18   while he unilaterally stays the litigation.  Because Plaintiff has failed to attend a Court

19   ordered Conference and a Court ordered Hearing, and has not updated he contact

20   information to enable the Court to contact him in any way for over five months, nor has

21   he contacted the Court, this Court RECOMMENDS to the Honorable Michael M.

22   Anello, United States District Judge, that Plaintiff's Complaint be dismissed in its

23   entirety with prejudice.  Federal Rule of Civil Procedure 37(b)(2)(A)(ii).

24   ### V. CONCLUSION

25   Based on the foregoing, the undersigned RECOMMENDS that Plaintiff's

26   claims against the two remaining Defendants, Cornwell and the unknown canine

27   handler, be dismissed with prejudice.

28

12CV0510

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. Section 636(b)(1).

IT IS ORDERED that **no later than May 24, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties.  28 U.S.C. § 636(b)(1).  The document should be captioned "Objections to Report and Recommendation."  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **June 7, 2013**.

IT IS SO ORDERED.

DATED:  April 23, 2013

Hon. William V. Gallo
U.S. Magistrate Judge

12CV0510